**SOUTHERN UNION GATHERING COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 81–4464.

United States Court of Appeals, Fifth Circuit.

Sept. 27, 1982.
Rehearing Denied Oct. 25, 1982.

---

McGee & Ketcham, Phil W. Jordan, James S. D. Eisenhower, III, Robert J. Haggerty, Washington, D.C., for petitioner.

Jerome M. Feit, Sol., Auburn L. Mitchell, Atty. F. E. R. C., Washington, D. C., for respondent.

Before CLARK, Chief Judge, GARZA and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Southern Union Gathering Company (Gathering Company) has petitioned this Court on grounds that the Federal Energy Regulatory Commission (Commission) has wrongfully denied an interim rate adjustment request under the Natural Gas Act (NGA). The Commission, however, asserts that this Court has no jurisdiction to review the NGA claim, because Gathering Company failed to exhaust its administrative remedies. Additionally, the Commission contends the NGA claim was properly rejected on the merits.

## I. Background

Gathering Company, a subsidiary of Southern Union Company, purchases natural gas from producers in New Mexico, gathers it, and then resells the gas to both intrastate and interstate customers. Gathering Company's primary customer is the Gas Company of New Mexico, which strictly serves the intrastate New Mexico market. Gathering Company's surplus gas goes to El Paso Natural Gas Company (El Paso) for interstate sale.

Gathering Company's pricing of gas for resale is determined by the cost of gas at the wellhead plus a gathering charge. Because Gathering Company is neither a natural gas producer nor a natural gas pipeline company, its profitability is based upon the gathering charge. The Commission does not regulate Gathering Company's pricing of intrastate sales. In 1972, however, the Commission classified Gathering Company as an "independent producer" for purposes of regulating its sale of natural gas in interstate commerce. *Southern Union Gathering Company*, 47 F.P.C. 1177 (1972).

Prior to passage of the NGPA, Gathering Company's rate changes for interstate sales were subject to Commission approval under the provisions of the NGA. Section 4 of the NGA, 15 U.S.C. § 717c, required Gathering Company to submit notice of any rate changes to the Commission and to the public. Any *reasonable* change in rates would receive automatic approval after thirty days' notice, unless the Commission decided to approve the rate change immediately, conduct a hearing on the lawfulness of the rate, or defer the rate change for up to five

months.[1] Applying a "reasonableness" standard to Gathering Company's rate changes, the Commission was able to take into account Gathering Company's special need for a profitable gathering charge. Under this regulatory scheme, the Commission did not reject or suspend any of Gathering Company's rate filings prior to passage of the NGPA.

When the NGPA was enacted on November 9, 1978, Gathering Company's interstate sales also became subject to the jurisdiction of the NGPA.[2] On December 11, 1978, Gathering Company filed a notice to change the gathering allowance on sales to El Paso from 11.27 cents to 19.27 cents per Mcf, but the Commission rejected it as improperly filed under the NGA, rather than the NGPA. The Commission held that Gathering Company should have filed an adjustment request under section 502(c), the special hardship provision of the NGPA, rather than file a notice of rate change pursuant to section 4 of the NGA.[3] Gathering Com-

1. Section 4 of the NGA recites, in pertinent part:

(d) Unless the Commission otherwise orders, no change shall be made by any natural-gas company in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.

(e) Whenever any such new schedule is filed the Commission shall have authority, either upon complaint of any State, municipality, State commission or gas distributing company, or upon its own initiative without complaint, at once, and if it so orders, without answer or formal pleading by the natural-gas company, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the Commission, upon filing with such schedules and delivering to the natural-gas company affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect; and after full hearings, either completed before or after the rate, charge, classification, or service goes into effect, the Commission may make such orders with reference thereto as would be proper in a proceeding initiated after it had become effective.

2. In contrast to the NGA's reasonableness standard for approving rate increases, the NGPA set forth a scheme of congressionally specified ceiling prices. *See* 15 U.S.C. § 3312–3319. This Court, in *Columbia Gas v. FERC*, 651 F.2d 1146, n.15 (5th Cir. 1981), expressed how the NGPA pricing regulations differ from the older NGA regulatory scheme:

The Commission no longer engages in rate-setting for producer sales except in a few specified instances, and then only to increase the ceiling price above the statutory level. NGPA §§ 104(b)(2), 106(c), 107(b), & 109(b)(2), 15 U.S.C.A. §§ 3314(b)(2), 3316(c), 3317(b), & 3319(b)(2). Except when setting prices in excess of the statutory ceilings, FERC no longer inquires into producer costs or sets permissible rates of return for producers. The focus of the inquiry shifts away from rate-setting considerations and instead is on eligibility for various pricing classifications and authority to collect the category for which the producer eventually qualifies.

Any special gathering costs not adequately covered by the applicable ceiling price under the NGPA are only allowed by rule or order of the Commission. NGPA § 110(a)(2), 15 U.S.C. § 3320(a)(2). The Commission is presently engaged in generic rulemaking to determine revised gathering allowances which will be retroactive to July 15, 1980. Pending completion of rulemaking proceedings, however, a company is required to seek an adjustment of a gathering allowance pursuant to Commission regulations implementing NGPA § 502(c), 15 U.S.C. § 3412(c). NGPA § 502(c) recites, in pertinent part:

The Commission ... shall, by rule provide for the making of such adjustments, consistent with the other purposes of this chapter, as may be necessary to prevent special hardship, inequity, or an unfair distribution of burdens.

18 C.F.R. § 271.1106 and 18 C.F.R. § 1.41 implement this provision.

3. The Commission justified its determination as follows:

While a natural gas company is still required to make a rate filing under Section 4 of the

pany then filed the proposed change as an adjustment request under the NGPA, and the Director, Office of Pipeline and Producer Regulations (OPPR), granted the request.

The case *sub judice* arose on February 17, 1981 when Gathering Company sought yet another increase in its gathering allowance from 19.27 cents per Mcf to 23.70 cents per Mcf. Gathering Company filed both a notice of rate change under the NGA and an interim adjustment request under the NGPA. On March 17, 1981, the Director, OPPR, denied the NGA claim on the ground that NGPA regulations applied to Gathering Company's application. He also denied the NGPA claim on grounds that no special hardship, inequity, or unfair burden had been demonstrated, as required by NGPA § 502. The Director relied on financial data submitted by Gathering Company which demonstrated an 8.1 percent rate of return for the twelve-month period ending September 30, 1980.

On August 14, 1981, Gathering Company filed for Commission review of the Director's order, attaching additional financial data to justify interim relief under the NGPA. Gathering Company also sought rehearing of its NGA claim.[4] On November 18, 1981, the Office of Opinions and Review granted in part Gathering Company's request for interim relief under the NGPA,

based on the new information filed. Gathering Company then requested that the NGPA review proceeding be temporarily suspended to permit settlement negotiations. That part of the case was remanded to the Director of OPPR for consideration of Gathering Company's new financial data and to facilitate settlement; the NGPA review proceeding is still pending in that posture.

The Commission, however, failed to take any action on the appeal of the NGA claim. Gathering Company now petitions this Court to review that portion of the March 17, 1981 order of the Director, OPPR, rejecting its filing under the NGA.

## II. *Jurisdiction*

Before this Court may review the NGA claim, however, Gathering Company must have properly exhausted its administrative remedies.[5] The Commission contends that Gathering Company failed to exhaust its administrative remedies when it failed to seek rehearing of the Commission's denial of its NGA claim, pursuant to section 1.7(d) of the Commission's Rules of Practice and Procedure. Gathering Company asserts that its application for rehearing of the OPPR Director's denial before the entire Commission satisfied the rehearing requirement of section 1.7(d), because the Di-

---

NGA for any sale covered under the NGA, it is not entitled under that section in light of the NGPA to file for any rate increase in excess of that authorized under the NGPA. In short, the pricing provisions of the NGPA have been *superimposed* upon the provisions of Section 4 of the NGA. (emphasis added).

4. Gathering Company's petition for Commission review of the July 17, 1981 order of the Director of OPPR recites, in pertinent part: Pursuant to sections 1.41(j)(1) and 1.40 of the Commission's Rules of Practice and Procedure ("Rules"), Southern Union Gathering Company ("Gathering Company") or ("Petitioner") respectfully seeks Commission review of an Order issued by the Director of the Office of Pipeline and Producer Regulation issued on July 17, 1981 in the above referenced proceeding. In addition, Gathering Company requests a full evidentiary hearing, to which it is entitled pursuant to section 1.40(b) of the Rules, and also requests certain

interim relief under section 1.40(e)(4). *Lastly*, pursuant to section 19(a) of the Natural Gas Act ("NGA") and section 1.34 of the Rules, and section 506(a)(2) of the Natural Gas Policy Act of 1978 ("NGPA") and section 286.102 of the Regulations Implementing the Natural Gas Policy Gas [sic] Act of 1978, *Gathering Company respectfully applies for rehearing of that portion of the Director's Order issued July 17, 1981, rejecting Gathering Company's filing for rate change under section 4 of the NGA.* (emphasis added).

5. On December 23, 1981, the Commission sought dismissal of this proceeding because Gathering Company had not followed the procedures set forth in §§ 1.40 and 1.41 of its Regulations, 18 C.F.R. §§ 1.40 & 1.41 (1981). These procedures apply specifically to NGPA claims. This Court denied the Commission's motion by order issued February 11, 1982.

rector's denial was a final order of the Commission. In the alternative, Gathering Company asserts that compliance with section 1.7(d) was not required, either because the provision is permissive or invalid.

Section 19(a) of the NGA mandates that a reviewing court may not consider any objection to an order of the Commission prior to the petitioner's application for rehearing with the Commission. 15 U.S.C. § 717r(a).[6] This Court has recognized that a petition for rehearing is a jurisdictional prerequisite to judicial review of both NGPA and NGA claims. *Placid Oil Co. v. FERC*, 666 F.2d 976, 980 (5th Cir. 1982); *Ecee, Inc. v. FERC*, 611 F.2d 554, 565–66 (5th Cir. 1980); *Boston Gas Company v. FERC*, 575 F.2d 975 (1st Cir. 1978).

Gathering Company contends that it satisfied the rehearing requirement merely by appealing the Director's order to the Commission. Section 1.7 of the Commission's Rules of Practice and Procedure, however, explicitly states that a *second* application for rehearing is required after the Commission denies an appeal of a delegated staff action.[7] 18 C.F.R. § 1.7. As set forth in section 1.7 this regulation recites, in pertinent part:

1.7 Petitions.

(d) *Appeals from actions of the staff.* Any staff action, other than a decision or ruling of a presiding administrative law judge, taken pursuant to authority delegated to the staff by the Commission that would be final, but for the provisions of this paragraph, may be appealed to the Commission by any interested person. The challenged staff action may be appealed by filing a petition within 30 days of the action. Answers to such petitions may be filed by any party within 10 days of service of the petition. Petitions and answers filed under this paragraph shall conform to the requirements of §§ 1.15 through 1.17. An appeal from any ruling of a presiding administrative law judge shall conform to the requirements of § 1.28 of this chapter. The Commission considers that any petition for appeal from action taken by the staff shall be deemed to be denied if not acted upon by the Commission within 30 days after the filing of such petition. The Commission further considers its action [on] appeals ma[d]e pursuant to this paragraph to be final agency action that is subject to an application for rehearing under § 1.34.

(emphasis added). According to this regulation, Gathering Company should have appealed the Order of the OPPR Director, waited for the Commission to deny the appeal explicitly or by inaction, applied for rehearing, and then exercised its right of judicial review under section 19(b) of the NGA after denial of rehearing. 15 U.S.C. § 717r(b).

In the instant action, however, Gathering Company petitioned the Commission for review of staff action, but failed to file another petition for rehearing after the Commission effectively denied the NGA claim by its inaction.[8] Accordingly, Gathering Compa-

---

**6.** 15 U.S.C. § 717r(a) sets forth the procedures for submitting an application for rehearing. Section 717r(a) recites, in pertinent part:

The application for rehearing shall set forth specifically the ground or grounds upon which such application is based. Upon such application the Commission shall have power to grant or deny rehearing or to abrogate or modify its order without further hearing. Unless the Commission acts upon the application for rehearing within thirty days after it is filed, such application may be deemed to have been denied. *No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon.*

(emphasis added).

These procedures are elaborated upon by Commission regulations. *See* 18 C.F.R. § 1.34. Unless the Commission acts upon the application for rehearing within 30 days after it is filed such application shall be deemed to have been denied.

**7.** The OPPR Director was delegated authority to issue an order by § 375.307 of the Commission's Revised General Rules, 18 C.F.R. § 375.307 (1981).

**8.** 18 C.F.R. § 1.7 states that "any petition for appeal from action taken by the staff shall be deemed to be denied if not acted upon by the Commission within 30 days after the filing of such petition."

ny has failed to comply with a jurisdictional prerequisite for judicial review.[9]

Gathering Company contends that section 1.7(d), under which a party "may" appeal an order by the OPPR Director, is not mandatory to the exhaustion of administrative remedies. The term "may," however, refers to the right of a petitioner to appeal if dissatisfied with the Director's order, not a permissive right to circumvent the requirements of section 1.7(d). Neither is there merit in Gathering Company's contention that section 1.7(d) is invalid for failing to comply with the Administrative Procedures Act ("APA"), 5 U.S.C. § 704. Section 10(c) of the APA provides that any action must be "inoperative" pending exhaustion of administrative appeals. The mere fact that section 1.7(d) does not explicitly state that the Director's actions are inoperative is not grounds for invalidating this administrative regulation.[10]

Accordingly, in view of Gathering Company's failure to exhaust administrative remedies by not making application for rehearing, its petition for review is DISMISSED.

---

**9.** As noted in *Ecee, Inc. v. FERC,* 611 F.2d at 557 n.7, the rehearing requirement presents petitioners with a "Hobson's choice." During the rehearing process, petitioners must comply with decisions they believe to be unlawful, even if compliance harms their interest. If petitioners directly seek judicial review, however, the court may determine that a rehearing was necessary and the petitioners have lost their right to challenge the substantive rule because they have failed to file for rehearing within the 30-day limitation for rehearing petitions.

**10.** In view of the disposition here made, it is not necessary to address the Commission's alternative contention that the NGA § 4 filing was a nullity and properly rejected.